IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHN R. PITTS, JR., #M13166,** | |
| **Plaintiff,** | |
| v. | Case No. 3:18-cv-01781-SMY |
| **MOHAMMED SIDDIQUI, REYNAL CALDWELL, and REVA ENGELAGE,** | |
| **Defendants.** | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff John R. Pitts, Jr., an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center. Plaintiff is proceeding on the following claim:

Count 1: Eighth Amendment deliberate indifference to medical needs claim against Defendants Siddiqui, Caldwell, and Engelage for denying Plaintiff adequate medical treatment for his rectal pain and hemorrhoids at Menard.

(Doc. 89). This matter is now before the Court on motions for summary judgment filed by Defendants Reynal Caldwell, Mohammed Siddiqui, and Reva Engelage. (Docs. 115, 118). Plaintiff filed a response opposing the motions. (Doc. 121). For the following reasons, the motions are **DENIED**.

## FACTS[1]

### Dr. Siddiqui and Dr. Caldwell

Plaintiff is a 56-year-old male who has been incarcerated in IDOC since 2010. (Doc. 116-1, pp. 2-3, Deposition of John Pitts at 7:3-13, 9:1-6). Plaintiff had complaints regarding

---
[1] The facts are undisputed unless otherwise noted.

hemorrhoids from January 2018 to April 2019. (*Id.*, p. 4 at 13:17-16:8, 16:20-24). Hemorrhoids are relatively common and appear more frequently in people over 50. (Doc. 116-3, Declaration of Mohammed Siddiqui, ¶ 6).

Dr. Reynal Caldwell is a graduate of the Kirksville College of Osteopathic Medicine, now A.T. Still University of Health Sciences, and is a licensed physician in the state of Illinois. (Doc. 116-2, Declaration of Reynal Caldwell, ¶ 3). Dr. Caldwell has been employed by Wexford Health Sources, Inc. as a traveling medical director since May 18, 2015, treating patients at certain prisons in Southern Illinois. (*Id.*, ¶2).

Dr. Mohammed Siddiqui received his medical degree from the University of Sind and is licensed to practice medicine in the state of Illinois. (Doc. 116-3, ¶ 3). Dr. Siddiqui was employed by Wexford Health Sources, Inc. as the Medical Director at Menard Correctional Center from June 12, 2017 to August 2021. (*Id.*, ¶ 2).

Plaintiff first presented to the health care unit ("HCU") for a nurse sick call regarding hemorrhoid issues on January 30, 2018. (Doc. 116-1, p. 4 at 14:14-19; Doc. 116-4, p. 96).[2] He was prescribed fiber and Colace tablets and given instructions on increasing activity and intake of fiber and fluids. (Doc. 116-4, p. 96). He declined a visual examination. (*Id.*). The Offender Outpatient Progress Notes for that visit do not reflect that Plaintiff reported any pain. (*Id.*). Plaintiff asserts, however, that he complained of severe pain related to hemorrhoids. (Doc. 121, p. 33).

---

[2] The Court notes that there are medical records attached to the summary judgment motions that are not relevant to the claims in this case. There is no dispute that the relevant time frame for Plaintiff's claim is January 2018 to April 2019 and that his claim pertains to treatment of hemorrhoids and related pain. Yet, there are medical ***and mental health*** records dating back to 2010. The inclusion of irrelevant documents causes a waste of judicial resources because the Court carefully reviews all documents submitted. Counsel should avoid the inclusion of unnecessary documents in the future. Additionally, there is information in the records that was not redacted as required by SDIL-LR 5.1 (d). Counsel is reminded that failure to redact personal identifiers may subject them to discipline.

Plaintiff next presented to the HCU regarding his hemorrhoids on February 27, 2018. (Doc. 116-4, p. 98). He was continued on fiber tabs and was again instructed to increase activity and intake of fiber and fluids. (*Id.*). He declined a visual exam. (*Id.*). The Offender Outpatient Progress Notes for that visit do not reflect that Plaintiff discussed pain with the nurse. (*Id.*). However, Plaintiff asserts he told the nurse about severe pain due to hemorrhoids after bowel movements and that he had written about the pain in his request slip for medical treatment. (Doc. 121, p. 34).

Plaintiff first saw Dr. Caldwell regarding his hemorrhoids on March 3, 2018. (Doc. 116-4, p. 99). Dr. Caldwell prescribed fiber tabs to help treat Plaintiff's hemorrhoids. (*Id.*). The Offender Outpatient Progress Notes do not reflect any complaints of pain. (*Id.*). According to Plaintiff, however, he complained of severe pain after bowel movements and Dr. Caldwell told him that his "hemorrhoids should have healed, to give it 2 weeks." (Doc. 121, p. 34).

Plaintiff saw Dr. Siddiqui on March 27, 2018 to discuss issues with his abdomen and breasts. (Doc. 116-3, ¶ 7; Doc. 116-4, p. 101). The Offender Outpatient Progress Notes do not reflect any discussion regarding Plaintiff's hemorrhoids or any related pain. (*Id.*). However, Plaintiff asserts that he presented other issues including hemorrhoids. (Doc. 121, p. 34). He also testified that he told Dr. Siddiqui that the hemorrhoid cream caused pain, but was told to continue to use it. (*Id.*).

Plaintiff next presented to the HCU regarding his hemorrhoids on April 3, 2018. (Doc. 116-4, p. 103). At that visit, Dr. Siddiqui discussed several issues with Plaintiff, including gastroesophageal reflux disease ("GERD") and hemorrhoids. (*Id.*). Dr. Siddiqui prescribed hemorrhoid cream and hydrocortisone cream to treat Plaintiff's hemorrhoids. (*Id.*). The Offender Outpatient Progress Notes do not reflect any complaints of pain. (*Id.*). According to

Plaintiff, Dr. Siddiqui told him that "there's nothing that can be done for hemorrhoids" and gave him hydrocortisone cream to mix with the hemorrhoid cream because Plaintiff told him the hemorrhoid cream was causing pain. (Doc. 121, p. 34). Plaintiff did not use the creams as directed by Dr. Siddiqui, only using the mix of the hydrocortisone and hemorrhoid cream once and the hemorrhoid cream alone twice. (Doc. 116-1, pp. 10-11 at 39:20-40:23, 41:4-7). According to Plaintiff, the cream caused more pain. (Doc. 121, p. 34).

Plaintiff was next seen by Dr. Siddiqui on May 3, 2018. (Doc. 116-3, ¶ 9; Doc. 116-4, p. 108). According to the Offender Outpatient Progress Notes, Plaintiff denied constipation and noted no bleeding. The Notes do not reflect that Plaintiff told Dr. Siddiqui that the creams were not working or alerted him to ongoing pain. (*Id.*). Dr. Siddiqui ordered Plaintiff to continue to use the creams. (*Id.*). According to Plaintiff, he told Dr. Siddiqui that the cream caused worse pain. (Doc. 121, p. 34).

Plaintiff saw Dr. Siddiqui regarding issues related to his bowel movements on May 10, 2018. (Doc. 116-3, ¶ 10; Doc. 116-4, p. 111). Dr. Siddiqui ordered blood work, which came back normal on May 29, 2018. (Doc. 116-3, ¶ 10; Doc. 116-4, pp. 250-251). Although the Offender Outpatient Progress Notes do not reflect complaints of hemorrhoid pain at that visit (Doc. 116-3, ¶ 10; Doc. 116-4, p. 111), Plaintiff asserts they did in fact discuss hemorrhoid pain (Doc. 121, p. 34).

Plaintiff presented to the HCU for a rectal exam on May 22, 2018. (Doc. 116-1, p. 11 at 43.25–44:6; Doc. 116-4, p. 113). The results of the exam were normal and the guaiac test, or fecal occult blood test, was negative. (*Id.*). During that visit, he reported burning pain at all times, which was worse with bowel movements. (*Id.*).

Plaintiff had a medical visit on June 3, 2018 at which he reported pain with bowel

movements and requested screening for colon and rectal cancer. (Doc. 116-4, p. 115). A physician referral was made. (*Id.*).

Plaintiff saw Dr. Siddiqui on June 7, 2018. (Doc. 116-3, ¶ 11; Doc. 116-4, p. 116). Dr. Siddiqui noted that Plaintiff reported painful bowel movements for six months, that the rectal exam on May 22, 2018 was normal, and a guaiac test had been negative. (*Id.*). Dr. Siddiqui referred Plaintiff to collegial review for a colonoscopy noting Plaintiff's family history of colon cancer. (Doc. 116-3, ¶ 12; Doc. 116-4, pp. 118, 165-167). The referral was denied on June 20, 2018. An alternative treatment plan was agreed upon to obtain x-rays of Plaintiff's kidneys, ureter, and bladder and to begin a stool softener. (*Id.*).

From July 2018 until September 28, 2018, Plaintiff refused to pay co-payments for nurse sick calls and was not seen by any healthcare providers. (Doc. 116-1, p. 14 at 55:6-16; Doc. 116-4, pp. 119- 122). Plaintiff had a nurse sick call visit on September 28, 2018 for his hemorrhoid issues. (Doc. 116-4, p. 122).

Plaintiff was next seen by Dr. Siddiqui on October 9, 2018. (Doc. 116-3, ¶ 13; Doc. 116-4, p. 123). Plaintiff demanded to be sent out for a colonoscopy due to rectal pain. (*Id.*). Dr. Siddiqui suggested repeating the rectal exam, but Plaintiff refused. (*Id.*). The Offender Outpatient Progress Notes for that visit do not reflect that Plaintiff discussed any issues with the creams. (*Id.*). However, Plaintiff asserts he told Dr. Siddiqui the cream caused severe pain, but he refused to address the issue. (Doc. 121, p. 34).

Plaintiff saw Dr. Caldwell regarding his hemorrhoids on October 28, 2018. (Doc. 116-4, p. 124). They discussed Plaintiff's family history of rectal cancer. (*Id.*). Dr. Caldwell requested a collegial referral for Plaintiff to have a gastroenterologist consultation for colon screening. (*Id.*; Doc. 116-4, p. 168). In the referral, Dr. Caldwell noted Plaintiff's pain after

bowel movements, a family history of colon cancer, and that the digital examination did not record any abnormalities.  (*Id.*). In collegial review, the request for a colon screening was denied and an alternative treatment plan was devised to start a stool softener under direct supervision and obtain abdominal films.  (Doc. 116-4, pp. 126, 169-170).

Plaintiff saw Dr. Caldwell on November 26, 2018.  (Doc. 116-2, ¶ 9; Doc. 116-4. p. 126). Dr. Caldwell noted that Plaintiff's KUB x-rays were negative and that Plaintiff was on a stool softener.  (*Id.*).  Dr. Caldwell prescribed Reglan—an antiemetic and gut motility stimulator. (*Id.*).

Plaintiff saw Dr. Siddiqui with complaints of rectal pain on December 4, 2018.  (Doc. 116-3, ¶ 14; Doc. 116-4, p. 128).  Dr. Siddiqui noted chronic rectal pain with normal bowel movements and that Plaintiff did not want to repeat a rectal exam.  (*Id.*).  Dr. Siddiqui referred Plaintiff to collegial review for a gastroenterologist evaluation.  (*Id.*; Doc. 116-4, pp. 128, 171).  Dr. Siddiqui presented Plaintiff in collegial review for a gastroenterologist evaluation, which was denied on December 11, 2018 and an alternative treatment plan was recommended.  (Doc. 116-3, ¶ 15; Doc. 116-4, pp. 129, 172-173).

Plaintiff next presented to Dr. Siddiqui on January 18, 2019.  (Doc. 116-3, ¶ 16; Doc. 116-4, p. 131).  Dr. Siddiqui noted that Plaintiff had not improved with the Reglan.  (*Id.*).  Plaintiff complained of pain and burning after bowel movements and demanded a referral.  (*Id.*). According to Plaintiff, Dr. Siddiqui told him that the Reglan prescribed by Dr. Caldwell did nothing to help and should not have been prescribed.  (Doc. 121, p. 34).  Dr. Siddiqui presented Plaintiff in collegial review on January 24, 2019 for a gastroenterologist evaluation noting the alternative treatment plan had failed.  (Doc. 116-3, ¶ 17; Doc. 116-4, pp. 133, 174-175).  The referral was approved.  (*Id.*).

In their Declarations, Dr. Caldwell and Dr. Siddiqui assert that they used their professional judgment and decades of experience as medical doctors to treat Plaintiff's hemorrhoids and that the treatment provided was appropriate. (Doc. 116-2, ¶ 11; Doc. 116-3, ¶ 21).

Plaintiff received a gastroenterologist consultation on April 9, 2019. (Doc. 116-3, ¶ 17; Doc. 116-4, pp. 134, 176-183). The GI specialist prescribed daily hydrocortisone suppositories and requested a colonoscopy, which Dr. Siddiqui presented in collegial review. (Doc. 116-3, ¶ 18; Doc. 116-4, pp. 176-185). Plaintiff testified the suppositories helped and he saw significant improvement after the first week or so. (Doc. 116-1, p. 16 at 64:23-65:22). The colonoscopy was approved and subsequently performed on May 30, 2019. (Doc. 116-4, pp. 137, 191-204). The gastroenterologist noted minimal diverticulitis and grade 2 internal hemorrhoids without active bleeding and recommended Plaintiff begin a high-fiber diet and resume medications and diet as before. (Doc. 116-4, p. 200).

### Nurse Engelage

Defendant Engelage was a correctional medical technician employed by the Illinois Department of Corrections and worked at Menard Correctional Center in 2018. (Doc. 119-3, Declaration of Reva Engelage, ¶ 1).

Plaintiff began having issues with hemorrhoids in January 2018. (Doc. 119-1, p. 4 at 13:17-20; Doc. 119-2, p. 9). Plaintiff attended medical visits for his hemorrhoids and related pain on January 30, February 27, March 3, April 3, April 18, April 27, May 3, May 7, May 10, May 22, June 3, and June 7, 2018. (Doc. 119-2, pp. 9, 11, 12, 16, 17-18, 20, 21, 24, 26, 28, 29).

Plaintiff saw Nurse Engelage on June 19, 2018 for indigestion and heartburn. (*Id.*, p. 30). He submitted a payment voucher for the $5 co-payment for that visit. (*Id.*). Plaintiff was seen by a nurse practitioner on June 25, 2018 for complaints relating to constipation and acid reflux.

(*Id.*, p. 31).

During a medical visit with Nurse Engelage on July 3, 2018, Plaintiff refused to pay a copayment for an "ongoing issue." (*Id.*, p. 32). He also refused to pay co-payments on July 9, July 11, July 18, August 7, and August 14, 2018. (*Id.*, pp. 32-33). According to Nurse Engelage, if Plaintiff had paid the copayments, he would have been seen during nurse sick call on those days. (Doc. 119-3, ¶ 8). Plaintiff had subsequent medical visits for his hemorrhoids and related pain on September 28, October 9, and October 28, 2018. (*Id.*, p. 14 at 55:17-21; Doc. 119-2, pp. 35-37).

On days that Nurse Engelage ran sick call lines, she would make rounds prior to the call line to confirm which individuals would be attending the nurse sick call.[3] (Doc. 119-3, ¶ 5). Upon arrival at the nurse sick call, inmates are given a money voucher to sign indicating their consent to pay the required copay. (*Id.,* ¶ 6).

Plaintiff testified that the $5 co-payment was not required for each visit if you were being seen for an ailment that was on the list of chronic issues. (Doc. 119-1, p. 24 at 96:4-22). Plaintiff admits the medical condition of hemorrhoids is not on that list of chronic issues but believes that chronic pain is on the list. (*Id.*). He also testified that he did not pay the co-payment at times because he did not have the funds. (Doc. 119-1, p. 14 at 53:21-55:3). He received only state pay of $10 per month and otherwise relied on people sending him money. (*Id.*).

Plaintiff was told by the C/O that Nurse Engelage said that if he was not going to pay the co-pay, he should not show up. (Doc. 121, p. 2). That's why the passes were canceled and/or denied. (*Id.*). That occurred for 11 medical requests that Plaintiff submitted. (*Id.*).

## **DISCUSSION**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as

---

[3] Plaintiff disputes that Nurse Engelage routinely made rounds. (Doc. 121).

to any material fact and the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, the Court may not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). And it must view the evidence "in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences, and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

Section 1983 provides a private right of action against persons acting under color of state law who violate constitutional rights. 42 U.S.C. § 1983. Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To prevail on an Eighth Amendment claim of constitutionally-deficient medical care, a prisoner must satisfy a two-part test. *Id.* He must establish that he had an objectively serious medical need. *Id.* The second, subjective prong requires a prisoner to show that the defendant had knowledge of facts from which he or she could infer that a substantial risk of serious harm exists and then disregards that risk. *Id.* at 476.

Serious medical needs are not only conditions that are life-threatening or that carry risks of permanent, serious impairment if left untreated, but also include those for which withholding medical care results in needless pain and suffering, those which a physician has determined require

treatment, and those for which the need for treatment would be obvious to a layperson. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In the instant case, there is evidence in the record that Plaintiff's hemorrhoids caused him severe, unrelenting pain over many months for which he repeatedly sought medical treatment and that health care providers provided treatment including hemorrhoid cream, hydrocortisone cream, stool softeners, changes in diet and activity, and eventually surgery. A reasonable jury could find that Plaintiff suffered from a serious medical condition under those circumstances.

Deliberate indifference is proved by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). An inmate is not required to show that he was literally ignored by prison staff to demonstrate deliberate indifference. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). If a risk from a course of medical treatment, or lack thereof, is obvious, a factfinder can infer that a defendant knew about it and disregarded it. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Even where a defendant denies being aware of a substantial risk of serious harm, summary judgment is inappropriate when a reasonable jury could conclude from other evidence that this was not so. *Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016).

Deliberate indifference can be found if a medical provider defendant ignored a request for treatment, substantially departed from accepted professional standards, persisted in an ineffective course of treatment, or inexplicably delayed treatment. *Id.* at 729; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

### Dr. Siddiqui and Dr. Caldwell

Construing the facts and all reasonable inferences in Plaintiff's favor, a jury could conclude that Dr. Siddiqui and Dr. Caldwell failed to adequately treat Plaintiff's pain, disregarded his

complaints that the treatment they provided was ineffective, failed to send him to an outside specialist earlier in the course of treatment despite his multiple requests, and unnecessarily caused him prolonged pain and suffering. Once Plaintiff was finally approved for the colonoscopy, it led to immediate successful treatment. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) ("The fact that the endoscopy, when finally performed, did lead to successful treatment makes it all the more obvious that [defendant] and the other medical staff should have responded earlier to [Plaintiff'] requests for further testing."). Thus, Dr. Siddiqui and Dr. Caldwell are not entitled to summary judgment.

### Nurse Engelage

Plaintiff contends that Nurse Engelage was deliberately indifferent because she denied him medical care based on his failure to pay the $5 co-payment from July 2018 to September 28, 2018. But "[t]he Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012). And the imposition of a "modest fee for medical services, standing alone, does not violate the Constitution." *Id.* An inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Id.* at 1027. But this holding is explicitly limited to "inmates who are able to contribute to the cost of their care." *Id.* at 1026.

As the Seventh Circuit has noted, "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care." *Id.* at 1027. As such, conditioning medically necessary treatment on prepayment violates the Eighth Amendment. *See*

*Gonzalez v. O'Brien*, No. 16 C 50023, 2017 WL 1178602, at *4 (N.D. Ill. Mar. 30, 2017) (citing *Foy v. Bantry Group*, 2016 WL 5107096, at *2 (C.D. Ill. 2016) ("Inmates may be charged for medical treatment so long as that medical treatment is not withheld pending payment. Withholding treatment for want of payment is a violation of an inmate's constitutional rights.") (collecting cases).

The record indicates that Plaintiff was denied medical care from July 2018 until September 28, 2018, because he refused to pay co-payments for each medical visit.[4]  According to Plaintiff, during that time, Nurse Engelage conditioned the receipt of *any* medical care on payment of the co-payment. (Doc. 119-3, ¶¶ 6, 9); (Doc. 119-1, p. 14 at 53:21-55:3). Relatedly, there is no evidence in the record that Plaintiff had sufficient funds to pay the co-payments for the requested medical visits that were denied and/or canceled. (*See* Doc. 121, pp. 2, 8-18, 21-25). This evidence presents genuine disputes of material facts that preclude summary judgment for Nurse Engelage.

## **QUALIFIED IMMUNITY**

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct.  *See Pearson*, 555 U.S. at 232.  "The doctrine of qualified immunity protects

---

[4] To the extent Plaintiff argues he was exempt from the co-payment because he suffered from a chronic condition, that is a state law issue that cannot be pursued under § 1983.  *Id.*

government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Humphries v. Milwaukee Cty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (internal citations and quotation marks omitted).

There is factual evidence that could support a finding that Nurse Engelage's conduct violated a constitutional right and that her conduct violated clearly established law under the Eighth Amendment. As such, she is not entitled to summary judgment on grounds of qualified immunity.

## DISPOSITION

For the reasons stated, the Motions for Summary Judgment filed by Reynal Caldwell, Mohammed Siddiqui, and Reva Engelage (Docs. 115, 118) are **DENIED**.

This matter will proceed to trial on the claim in Count 1 against Defendants Caldwell, Siddiqui, and Engelage. A separate order will be issued recruiting Stand By Counsel for purposes of trial and to set this matter for a status conference to schedule final pretrial conference and trial dates.

**IT IS SO ORDERED.**

**DATED:   October 20, 2022**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**
